**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2328**

COMMONWEALTH OF VIRGINIA, DEPARTMENT OF SOCIAL
SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT,

>           Creditor – Appellant,

v.

BARRY SPENCER WEBB

>           Debtor – Appellee,

HERBERT L. BESKIN, Ch. 13 Trustee,

>           Trustee – Appellee,

and

U.S. TRUSTEE,

>           Trustee.

------------------------------

CHRISTOPHER T. MICALE,

>           Amicus Supporting Appellee.

Appeal from the United States District Court for the Western District of Virginia, at
Charlottesville.  Norman K. Moon, Senior District Judge. (3:17-cv-00028-NKM)

Argued:  September 28, 2018                    Decided:  November 19, 2018

Before MOTZ, AGEE, and DIAZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Motz and Judge Diaz joined.

_____

**ARGUED:** Matthew R. McGuire, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant. Angela M. Scolforo, CHAPTER 13 TRUSTEESHIP OF HERBERT L. BESKIN, Charlottesville, Virginia, for Appellees. **ON BRIEF:** Mark R. Herring, Attorney General, Cynthia V. Bailey, Deputy Attorney General, Elizabeth L. Gunn, Assistant Attorney General, Toby J. Heytens, Solicitor General, Matthew R. McGuire, Deputy Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellant. Angela M. Scolforo, Charlottesville, Virginia, for Trustee-Appellee. Jason B. Shorter, Roanoke, Virginia, for Amicus Curiae.

_____

2

AGEE, Circuit Judge:

Virginia's Department of Social Services, Division of Child Support Enforcement (the "Division") appeals from the judgment of the district court affirming the bankruptcy court's decision to return Barry Webb's post-petition Chapter 13 payments to him. Webb filed a voluntary petition for bankruptcy under Chapter 13 of the United States Bankruptcy Code and made post-petition payments to his Chapter 13 Trustee (the "Trustee") under 11 U.S.C. § 1326(a)(1) before the dismissal of the petition. Subsequent to the dismissal, the Division sought to obtain the post-petition payments held by the Trustee to apply against Webb's delinquent child support. The bankruptcy court ordered the Trustee to return the funds to Webb, and the district court affirmed. For the reasons set forth below, we affirm the judgment of the district court.

I.

A.

Chapter 13 is a voluntary proceeding that "allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." *Harris v. Viegelahn*, 135 S. Ct. 1829, 1835 (2015). When a debtor files a petition for Chapter 13 bankruptcy, the Bankruptcy Code requires him to "commence making payments not later than 30 days after" he proposes a plan. 11 U.S.C. § 1326(a)(1) ("post-petition payments"). The amount of the post-petition payments is set in the proposed Chapter 13 Plan. *Id.* § 1326(a)(1)(A). The Chapter 13 trustee retains the post-petition payments "until confirmation or denial of confirmation" of the Plan. *Id.*

3

§ 1326(a)(2). "If a plan is not confirmed, the trustee *shall return any [post-petition] payments* not previously paid and not yet due and owing to creditors pursuant to paragraph (3) *to the debtor*, after deducting any unpaid claim allowed under section 503(b)."[1] *Id.* (emphases added). The proper construction of the language of this statute is the issue before us.

Upon filing for bankruptcy, a debtor walls off his property from his creditors, including the post-petition payments to the Chapter 13 trustee. Nearly all of the debtor's property becomes "property of the estate." *See* 11 U.S.C. §§ 541(a) (defining the property of the bankruptcy estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case") and 1306(a) (including "all property" the debtor "acquires after the commencement of the case but before the case is closed, dismissed, or converted" as property of the estate). While the bankruptcy case is pending, creditors of the debtor are generally barred from any action against the debtor (outside the bankruptcy court) under the provisions of the automatic stay of 11 U.S.C. § 362(a). Consequently, the post-petition payments that Webb paid to the Chapter 13 Trustee under § 1326(a)(1) are property of the estate and are covered by the automatic stay while the bankruptcy case is pending.

---

[1] Section 503(b) defines "administrative claims," none of which are claimed to be at issue here. In other words, the parties agree the administrative expense exception under § 1326(a)(2) has no application to the Division's claim for child support payments. Similarly, no party claims any entitlement "pursuant to paragraph (3)." 11 U.S.C. § 1326(a)(2). Section 1326(a)(3) allows a court to "modify, increase, or reduce" certain payments to creditors "pending confirmation of a plan," which is not relevant or applicable here. *Id.* § 1326(a)(3).

The stay protects the estate's property "until such property is no longer property of the estate." 11 U.S.C. § 362(c)(1). Further, upon dismissal of a bankruptcy petition, the bankruptcy court's dismissal order "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case." *Id.* § 349(b)(3).

B.

In July 2016, Webb filed a voluntary petition for relief under Chapter 13 in the United States Bankruptcy Court for the Western District of Virginia. At the time, Webb owed nearly $75,000 to the Division for unpaid child support. In January 2017, the Division filed a proof of claim setting Webb's child support indebtedness in the amount of $74,277.32. *See* J.A. 145.

As required by § 1326(a)(1), Webb began making post-petition payments to the Trustee while awaiting confirmation of his proposed Chapter 13 Plan. However, despite four attempts, Webb was unable to propose a confirmable Chapter 13 Plan. The bankruptcy court, with Webb's consent, dismissed the case on February 10, 2017. At the time of dismissal, Webb had paid the Trustee $3,000.[2]

Section 63.2-1929 of the Code of Virginia permits the Division to serve a notice of levy upon "any person, firm, corporation, association, political subdivision or department of the Commonwealth." Va. Code Ann. § 63.2-1929. Citing the authority of that

---

[2] No part of the funds held by the Trustee represent a payment Webb made after his case was dismissed.

Virginia statute, the Division served the Trustee with an Order to Withhold for child support indebtedness soon after Webb's bankruptcy case was dismissed. The Order to Withhold directed the Trustee to surrender to the Division the $3,000 in post-petition payments the Trustee held.

The Trustee concluded that the Order to Withhold left him with "conflicting obligations." J.A. 163. On the one hand, "Bankruptcy Code Section 1326(a)(2) mandates that: 'the trustee *shall* return any such payments' to [Webb]." *Id.* Conversely, "the Order to Withhold directs the Trustee to 'immediately withhold from access by the debtor any property, assets, or money which is due, owing, or belonging to the debtor [and] deliver [such] property withheld . . . to the Division[.]'" *Id.* The state Order to Withhold also purported to hold the Trustee personally liable—for Webb's entire debt, plus interest—if he failed to comply. J.A. 166.

The Trustee then filed a motion in the bankruptcy court seeking direction as to whom he should pay the post-petition funds. After a hearing, the bankruptcy court directed the Trustee to return the funds to Webb. In a cogent opinion, the bankruptcy court resolved the matter based on the plain language of the Bankruptcy Code:

> This Court agrees with the line of cases finding that the language of section 1326(a)(2) is clear and unambiguous. That is, the Bankruptcy Code is clear that "[i]f a plan is not confirmed, the trustee . . . shall return such payments . . . to the debtor." At the February 9, 2017 hearing on confirmation of the debtor's chapter 13 plan, the Court did not confirm the plan and dismissed the case. At that point, the trustee became obligated under the Bankruptcy Code to return the funds to the debtor.[3] The Court

---

[3] The bankruptcy court added in a footnote that:

(Continued)

6

finds no ambiguity or confusion in the language of the statute as enacted. The Court thus will enforce the plain reading of this section.

The chapter 13 trustee in this case received the payments pursuant to his statutory duties as trustee. *See* 11 U.S.C. §§ 1302, 1326. The Bankruptcy Code, under section 1326, provides unambiguous terms for the trustee's responsibilities with respect to the payments received. That section provides a mechanism for a creditor to be paid the funds held by the trustee. That mechanism is pursuant to section 503(b) or section 1326(a). In this case the Division admits that it has no claim under either section 503(b) or under section 1326(a), but it asks this Court to direct the trustee to pay the Division anyway on the grounds that it was the first creditor to exercise its non-bankruptcy law collection remedies to, in effect, attach the funds held by the trustee. To honor the Division's collection order would require this Court to ignore the express language of Bankruptcy Code sections 1326 and 349.

J.A. 181-82 (footnote omitted).

The bankruptcy court bolstered its conclusion by pointing out that, if it adopted the Division's preferred construction, it would create a "race to the trustee," a result at odds with the effect of a dismissal under § 349(b)(3). J.A. 182. Thus, the bankruptcy court found that its reading of § 1326(a)(2) "returned [the parties] as closely as possible to their respective [pre-petition] positions." *Id.*[4]

In this case, the Division does not assert a claim under section 503(b) nor any rights to payments due and owing under section 1326(a)(3). No other creditors or parties in interest assert any claims under section 503(b) or right to payments due and owing under section 1326. Accordingly, under the statute, the funds held by the trustee "shall" be returned to the debtor.

J.A. 181 n.1.

[4] The bankruptcy court stayed its order pending appeal. That stay is still in effect and the Trustee has not distributed the $3,000 in post-petition payments.

7

The Division appealed to the district court, which affirmed the bankruptcy court's decision finding that the "[plain] language [of § 1326(a)(2)] . . . is determinative." J.A. 247. The district court noted that, after the automatic stay expires, creditors may pursue state law remedies against the debtor generally, including levying upon "other individuals who possess the debtor's property or income (for example, an employer)." J.A. 248. "But Congress changed the default situation in Section 1326(a)(2) by directing the Chapter 13 trustee to give the funds [paid to him by the debtor back] to the debtor." *Id.*

Relying on the plain language of the statute, the district court rejected the Division's alternate arguments. As the district court observed, Congress was certainly free to determine which party received a Chapter 13 debtor's funds upon dismissal, and it had made that choice unequivocally in § 1326(a)(2).

The Division appeals the district court's judgment. This Court has jurisdiction under 28 U.S.C. § 158(d)(1).

II.

A.

"When considering an appeal from a district court acting in its capacity as a bankruptcy appellate court, [this Court] conduct[s] an independent review of the bankruptcy court's decision, reviewing factual findings for clear error and legal conclusions de novo." *Campbell v. Hanover Ins. Co.* (*In re ESA Envtl. Specialists, Inc.*), 709 F.3d 388, 394 (4th Cir. 2013).

B.

8

The Supreme Court has long held that the "interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.'" *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 69 (2011) (quoting *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989)). Congress "says in a statute what it means and means in a statute what it says there." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks and citation omitted). If the statute's language is plain, that is "where the inquiry should end." *Ron Pair Enters.*, 489 U.S. at 241. The Court "should give effect to every word of a statute whenever possible." *Carroll v. Logan*, 735 F.3d 147, 152 (4th Cir. 2013).

Section 1326(a)(2) plainly states that when the bankruptcy court does not confirm a plan, the Chapter 13 trustee "shall return" post-petition payments to the debtor. 11 U.S.C. § 1326(a)(2). Congress has carved out an exception to this clear rule only for "payments not previously paid and not yet due and owing to creditors" under § 1326(a)(3) and after deducting "any unpaid claim allowed under section 503(b)." *Id.* The parties fully agree that neither of these exceptions apply in this case. Consequently, that leaves only the clear statutory direction to the trustee who "*shall* return any such payments . . . to the debtor[.]" *Id.* (emphasis added).

Congress could have added other exceptions to this rule, but it did not. *Fed. Commc'ns Comm'n v. Nextwave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003) ("[W]here Congress has intended to provide regulatory exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly[.]"). For example, Congress obviously knows how to make a special designation for child support payments when it

9

so chooses, as Congress did in the immediately preceding statute, § 1325. Under § 1325(b)(2), child support payments are specifically excluded as part of a debtor's "disposable income." But Congress simply chose not to reference such payments in the application of § 1326(a)(2). *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (internal quotation marks omitted).

Thus, Congress' intention "is unmistakably clear in the language of the statute": when a case is not confirmed, the trustee must return the post-petition payments *to the debtor*. *Dellmuth v. Muth*, 491 U.S. 223, 230 (1989) (internal quotation marks omitted). Here, Webb's Chapter 13 plan was not confirmed. Pursuant to the plain language of the statute, the Trustee must now return those post-petition payments to him. *See Carroll*, 735 F.3d at 152.

### C.

Notwithstanding the clear direction from Congress in § 1326(a)(2), the Division presents three arguments in support of its position. None have merit.

First, the Division argues that the language of § 1326(a) neither prohibits the Trustee from complying with the Order to Withhold nor mandates that the Chapter 13 trustee return payments to a debtor *whenever* a Chapter 13 plan is not confirmed. Instead, according to the Division, requiring return of the post-petition payments would

lead to an absurd result by forcing the trustee to return funds to the debtor even when the debtor contemplates submitting an amended plan. We disagree.

The Division's argument simply ignores the plain statutory direction that the trustee "*shall* return any [post-petition] payments . . . to the debtor[.]" 11 U.S.C. § 1326(a)(2) (emphasis added). And there is nothing at all absurd about returning the funds to the debtor. Besides being Congress' specific choice, it follows Congress' direction in § 349(b)(3) that the effect of dismissal of a case "revests the property of the estate in the entity in which such property was vested immediately before the commencement of [a bankruptcy case]." 11 U.S.C. § 349(b)(3). Here, that "entity" is Webb. *Id.* This result "follow[s] directly from Congress' decisions" to have these payments returned to the debtor after a confirmation of his plan is denied and particularly when the case is also dismissed. *Harris*, 135 S. Ct. at 1839. That outcome is not "demonstrably at odds with clearly expressed congressional intent." *RCI Tech. Corp. v. Sunterra Corp.* (*In re Sunterra Corp.*), 361 F.3d 257, 265 (4th Cir. 2004) (quoting *Sigmon Coal Co., Inc. v. Apfel*, 226 F.3d 291, 304 (4th Cir. 2000)). Neither is the outcome "so gross as to shock the general moral or common sense." *Id.* (quoting *Sigmon Coal Co.*, 226 F.3d at 304). If anything, the absurd result would be to ignore the plain statutory direction and create the "race to the trustee" that the bankruptcy court rejected. Thus, we agree with the bankruptcy and district courts that the Division's absurdity argument is without merit.

Second, the Division argues that the Court should read § 1326(a) in conjunction with §§ 349 and 362, the provisions of the Bankruptcy Code governing, respectively,

11

dismissal and the automatic stay. But following the plain language of § 1326(a)(2) creates no conflict with these other provisions of the Bankruptcy Code.

The Division's reference to § 349 is puzzling. As pointed out above, § 349(b)(3) "revests the property of the estate in the entity in which such property was vested immediately before the commencement of [a bankruptcy case]" upon dismissal of the case. 11 U.S.C. § 349(b)(3). That clear language simply reinforces the district court's determination that the payments be returned to Webb as the debtor whose case has been dismissed.

The Division's § 362 argument fares no better; under that statute, the automatic stay shielded Webb's post-petition payments from the Division or any other creditors during the Chapter 13 proceeding. Once the bankruptcy court dismissed the case, the automatic stay was lifted. The Division contends that it now should be able to pursue its remedies available in state court against Webb and directly levy on the Trustee as a stakeholder of Webb's assets.

As the district court pointed out, the Division's approach would generally be applicable to persons who possess Webb's property. But doing so in this particular instance would require the Trustee to relinquish post-petition payments to an entity other than the one designated by the statute—the debtor. *See* 11 U.S.C. § 1326(a)(2). The Division's § 362 argument is simply unrelated to the clear requirement of § 1326(a)(2). As the district court noted: "Section 362's description of a stay's conclusion does not contradict or muddle Section 1326(a)(2)'s statement about *who* gets the funds, it only addresses *when* those funds are available." J.A. 248.

12

Further, the Division contends that because funds the Trustee now holds did not exist before Webb filed his petition, revesting that money in him unfairly enhances his financial position. The Division posits that without the bankruptcy case, the money would not have been available to him because the Division could have garnished or levied upon it. Thus, according to the Division, the plain language of § 1326(a)(2) affords him greater protections than the Bankruptcy Code intends by protecting his money even after the stay expires. Whether that is true or not, that is the choice Congress has made and "follow[s] directly from Congress' decisions to shield postpetition wages from creditors" during the pendency of a Chapter 13 proceeding and to return the debtor's post-petition payments to him. *Harris*, 135 S. Ct. at 1839.

Lastly, the Division argues that reading § 1326 to bar levy on the Trustee through the Order to withhold overrides Virginia Code § 63.2-1929. The Division asserts that this violates a presumption that Congress did not intend to preempt state law by enacting a federal statute. The Division contends that § 1326(a)(2) and state laws allowing levy or garnishment are easily reconciled—if § 1326(a)(2) does not require the Trustee to refund the post-petition payments to Webb.

We are not persuaded. The Court is not at liberty to ignore the plain text of § 1326(a)(2): "Under the Supremacy Clause of the Constitution, U.S. Const. art. VI, cl. 2, a state law which conflicts with federal law is preempted." *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997). Thus, if "the federal statute dictates one result and the state statute another, the state statute is preempted to the extent that it directly conflicts with federal law." *Id.* Here, any state authority under Virginia Code § 63.2-1929 for levy on the

13

Trustee directly conflicts with the federal statutory mandate in § 1326(a)(2) that the Trustee refund the post-petition payments to Webb. Thus, § 1326(a)(2) preempts Virginia Code § 63.2-1929 and requires that the Trustee return the post-petition payments to Webb.

## III.

As the bankruptcy and district courts found, the plain language of § 1326(a)(2) resolves this case and requires the Trustee return the post-petition payments to Webb. Once the Trustee returns the funds to Webb, the Division, or any other creditor, is free to levy upon Webb or others who possess his property. Section 1326(a)(2) simply prevents the Division from levying upon the Trustee when he is in possession of the post-petition payments.

Thus, for all the foregoing reasons, the judgment of the district court is

*AFFIRMED.*